UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TERESA SILCOX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| FIRST TRUST AND SAVINGS BANK, | ) |
| | ) |
| Intervening Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:11-CV-264-TAV-CCS |
| | ) |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This action arises out of the fire loss of a home owned by Plaintiff Teresa Silcox which occurred on January 12, 2011. Defendant denied payment of the claim alleging that the subject insurance policy was cancelled effective December 3, 2010.

Before the court is Defendant's motion for summary judgment, to which Plaintiff has responded. The Court has carefully considered the parties' pleadings and supporting documents, all in light of the controlling law. For the reasons which follow, Defendants' motion for summary judgment is granted in part and denied in part. Defendant's motion is granted as to Plaintiff's claim for the bad faith penalty under Tennessee Code Ann. § 56-7-105; the motion is denied as to Plaintiff's claim for breach of contract.

## I. Background

In July 2010, Plaintiff renewed her State Farm homeowners' insurance policy with effective dates from July 31, 2010 through July 31, 2011 [Doc. 35-1]. The total premium for the policy was $1,678.00, which was to be paid in monthly installments of $139.83. *Id.* At the time of renewal, Plaintiff participated in the State Farm Payment Plan, which automatically drafted her bank account each month to pay insurance premiums, including her homeowners' insurance premiums. *Id.* On July 28, 2010, Plaintiff made payment pursuant to the State Farm Payment Plan in the amount of $260.36, of which $139.83 was for payment of the homeowners' insurance policy premium, reducing the remaining homeowners' insurance premium balance to $1,538.17. *Id.* On August 27, 2010, another draft in the amount of $260.36 was made pursuant to Plaintiff's State Farm Payment Plan, of which $139.83 was for payment of the homeowner's insurance policy premium, reducing the remaining balance to $1,398.34. *Id.*

On August 30, 2010, Plaintiff closed on a refinanced mortgage held by First Trust & Savings Bank [Doc. 14]. As part of the refinanced mortgage, First Trust assumed responsibility for payment of further homeowners' insurance premiums [Doc. 35-1]. The August 27, 2010 draft payment was returned by First Trust and was not processed. As a result of the returned payment, on September 2, 2010, $139.83 was charged back to the homeowners' insurance policy premium balance, resulting in a balance of $1,538.17. *Id.* After August 27, 2010 but before September 2, 2010, apparently unaware that the August 27 draft had been returned, First Trust contacted Roger Baldwin of the Roger Baldwin

2

State Farm Agency, who informed First Trust that the remaining premium balance was $1,398.34, which would have continued coverage through July 31, 2011. *Id.*

On September 2, 2010, the State Farm Payment Plan produced a cancellation notice dated September 3, 2010, which was mailed to Plaintiff to inform her that the August payment was returned by the bank and that the homeowners' insurance policy would be cancelled effective September 18, 2010. *Id.* The notice provided that the homeowners' insurance premium balance of $1,538.17 must be paid on or before September 16, 2010, or the policy would be cancelled effective September 18, 2010. The notice also informed Plaintiff that she was no longer eligible for the State Farm Payment Plan, and that in order to maintain coverage the full balance must be paid by September 16, 2010. *Id.* Additionally, on September 3, 2010, State Farm mailed a written notice of non-payment to the mortgage holder, First Trust, which stated the homeowners' insurance premium balance was $1,538.17 and that the policy would be cancelled due to non-payment if the full balance was not paid by September 18, 2010. *Id.*

Plaintiff has submitted the Affidavit of Brian Sexton, a former employee of First Trust. Sexton was the loan officer at First Trust who processed the mortgage refinance for Plaintiff in August 2010. On September 3, 2010, First Trust issued its cashier's check payable to State Farm in the amount of $1,398.34 which was mailed to Roger Baldwin's State Farm Agency. The check was deposited by the agency in their First Trust account on September 14, 2010. First Trust relied upon the representation by Roger Baldwin State Farm Agency concerning the amount of the premium and on behalf of Teresa

3

Silcox, made payment accordingly. First Trust had no further communications with State Farm concerning any remaining amount due on the policy after that time. First Trust avers that State Farm acknowledged receipt of the amount of $1,398.34 and had First Trust received notice of any remaining premiums due as alleged by Defendant, First Trust in its regular course of business would have contacted State Farm for either an explanation or made payment. However, First Trust states it never had the opportunity to make any such inquiry because it never received any further notices from State Farm. [Doc. 40-1].

As a result of the payment by First Trust, 2010, State Farm issued a written notice of reinstatement to Plaintiff and First Trust, showing that the policy was reinstated with continuous coverage on September 18, 2010 [Doc. 35-1]. The notice of reinstatement indicated that the amount due would be reflected in a separate bill. Additionally, on September 27, 2010, State Farm sent Plaintiff and First Trust a separate written notice of the remaining outstanding balance of $139.83 which was to be paid on or before November 1, 2010 [Doc. 35-1].

When the remaining balance was not paid, on November 15, 2010, State Farm sent separate written notices of cancellation to Plaintiff and First Trust, stating that if the remaining balance of $139.83 was not paid on or before December 3, 2010, the policy would be cancelled effective that date [Doc. 35-1]. Neither Plaintiff nor First Trust made payment for the remaining balance, and the policy was cancelled effective December 3,

2010. On December 7, 2010, the unearned premium of $964.30 was mailed to Plaintiff. *Id.*

First Trust admits to receiving the September 27, 2010 notice of reinstatement, but denies receiving the balance due notice sent the same day [Doc. 14]. Plaintiff also did not receive the September 27 notice of the outstanding balance of $139.83 [Doc. 40-2]. Neither Plaintiff nor First Trust received any notice from Defendant that the insurance policy was being cancelled [Doc. 38].

On January 12, 2011, Plaintiff's home was damaged in a fire. Plaintiff reported the fire loss to State Farm [Doc. 1]. On January 19, 2011, State Farm issued a denial letter to Plaintiff stating that her claim was denied because the policy had been cancelled effective December 3, 2010 [Doc. 34-5]. On January 20, 2011, counsel for Plaintiff sent a letter to State Farm acknowledging the denial and requesting claim forms [Doc. 34-6].

On February 16, 2011, counsel for Plaintiff wrote another letter to State Farm asking for claims forms and asking State Farm to reconsider the denial of Plaintiff's claim [Doc. 34-7]. On April 15, 2011, Plaintiff personally sent correspondence to State Farm making demand for payment of insurance proceeds related to the fire loss [Doc. 34-8]. On May 4, 2011, Plaintiff filed the instant complaint in the Circuit Court of Scott County, Tennessee. Defendant timely removed the action to this Court on June 9, 2011 [Doc. 1].

## State Farm Internal Business Practice Procedures for Mailing of Notices

Defendant submitted the Affidavit of Richie Garrison, a supervisor at the Insurance Support Center for State Farm Insurance. Garrison testified that in November 2010, customer notices for policyholders residing in the State of Tennessee were processed by State Farm Printing Inserting Mailing ("PIM") at the Insurance Support Center ("ISC") in Irving Texas ("Central"). Such customer notices would include non-pay cancellation notices [Doc. 34-3]. Two non-pay cancellation notices were produced for Plaintiff and mortgagee First Trust on November 15, 2010. These notices were printed, inserted, and sealed into an envelope with First-Class Mail permit imprinted at ISC Central PIM on November 16, 2010, in accordance with State Farm's internal business practice procedures. *Id.*

Video images of the non-pay cancellation notices in their sealed mailing envelopes were captured as part of the inserting process. Additionally, a Certificate of Mailing list was created, which indicated that the notices addressed to mortgagee First Trust and policyholder Teresa Silcox were included in the batch job produced by systems processing on November 15, 2010, and which were printed and inserted for mailing on November 16, 2010. *Id.* The Mailrun Summary Report for November 15, 2010 indicates that all documents in the batch, including the non-pay cancellation notices for Plaintiff and First Trust, were properly processed according to internal business practice procedures, and these notices were surrendered to Pitney Bowes Presort Services on

November 16, 2010 for mail presorting and presentation to the United States Postal Service ("USPS") for postal acceptance, processing, and delivery. *Id.*

Pitney Bowes is the presort services provider that picks up the mail from State Farm ISC Central in Irving, Texas, and transports the mail to Pitney Bowes' facility in Grand Prairie, Texas [Doc. 34-4]. The mail is presorted based upon zip code (and other factors) to earn bulk rate discounts meeting USPS rules and regulations for delivery to USPS. *Id.*

Before State Farm's mail is picked up daily by Pitney Bowes, it has been inserted into permit indicia envelopes, sealed, and placed into trays by State Farm. *Id.* At the State Farm ISC Central facility, Pitney Bowes receives a completed Customer Pickup Slip stating the amount of mail by pieces/trays, which Pickup Slip is signed by Pitney Bowes as a receipt acknowledgment with the mail at the Irving, Texas, State Farm location each business day, and then the mail is transported to the Pitney Bowes facility in Grand Prairie, Texas. *Id.*

Upon arrival at Pitney Bowes' facility, State Farm's mail is taken to Receiving Quality Control where the trays of mail are spot checked to ensure that the proper postage, mail date, and presort first class endorsement, all requirements of first class mail, are present. After completing the Receiving Quality Control step, State Farm's mail is placed in a queue for production. During this process a machine reads the address, "sprays the barcodes," then sorts the mail, during which process the State Farm mail is machine counted. *Id.* The machine count of the State Farm mail is compared to

7

Case 3:11-cv-00264-PLR-CCS   Document 44   Filed 01/27/14   Page 7 of 15   PageID #: 384

the count provided by State Farm on the Pickup Slip, thereby validating that all of State Farm's mail picked up by Pitney Bowes is processed and mailed that day. Having been sorted by zip code and placed in trays, the mail is sent to the Outbound Quality Control Department, where it is checked to ensure it has been properly sorted. The sorted mail is then placed in sleeves and banded for final distribution to the USPS. *Id.*

Upon completing the Outbound Quality Control process, the mail is staged for verification by a USPS clerk, who is on site at Pitney Bowes' facility. The USPS clerk and Pitney Bowes prepare a form PS.3600R receipt for the mail. *Id.* Beginning at 8:00 p.m. on the same day the mail was picked up at State Farm, the USPS picks up the mail at Pitney Bowes' facility. At this time, the mail is in the care, custody, and control of the USPS. These were the policies and procedures in place on November 15 and 16, 2010. *Id.*

Defendant moves for summary judgment stating that the subject insurance policy was properly cancelled, in accordance with the polity language, effective December 3, 2010, and that accordingly, there is no genuine issue of material fact and State Farm is entitled to judgment as a matter of law. Further, Defendant avers that Plaintiff's failure to comply with the pre-suit demand requirements of Tenn. Code Ann. § 56-7-105 are fatal to her claim for recovery under the bad faith statute, and State Farm argues it is entitled to judgment as a matter of law as to Plaintiff's cause of action for bad faith.

8

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.,* 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to

9

establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradfowd & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

**III.    Analysis**

    **A.    Breach of Contract Claim**

Defendant argues that State Farm properly cancelled Plaintiff's insurance policy effective December 3, 2010. Therefore, as a matter of law, there can be no recovery by Plaintiff or Intervening Plaintiff for insurance proceeds related to the fire loss of January 12, 2011, and State Farm is entitled to summary judgment.

Insurance contracts are subject to the same rules of construction as any other contract. *Tenn. Farmers Mut. Ins. Co. v. Moore,* 958 S.W.2d 759, 763 (Tenn. Ct. App. 1997). The plain language of the policy should be given its ordinary meaning, and the parties' intent is paramount. *Id.* The policy should be interpreted fairly and reasonably, giving the language of the policy its common, ordinary meaning. *Black v. Aetna Ins. Co.,* 909 S.W.2d 1, 3 (Tenn. Ct. App. 1995). Any ambiguity in the policy should be construed against the party who drafted it, the insurance company. *Moore*, at 763. When an insurer wishes to rely upon the cancellation of a policy by mailing a notice of cancellation, it must show that "it complied strictly with the policy's requirements." *Quintanta v. Tenn. Farmers Mut. Ins. Co.,* 774 S.W.2d 630, 633 (Tenn. Ct. App. 1989). Strict compliance is

required so that the insured will have time to obtain other insurance or protection. *Jefferson Ins. Co. of New York v. Curle,* 771 S.W.2d 424, 425-26 (Tenn. Ct. App. 1989).

Defendant asserts that under the plain terms of the policy at issue, State Farm was entitled to cancel the policy by mailing notice to Plaintiff, and that proof of mailing is sufficient proof of notice of cancellation. The relevant portion of Plaintiff's homeowner's policy states:

> b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declaration. Proof of mailing shall be sufficient proof of notice:
>
> (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

[Doc. 34-2]. Plaintiffs must be "conclusively presumed" to have known the contents of the policy, including the plan and unambiguous section setting forth when and how Defendant could cancel the policy. *See Stooksbury v. Amer. Nat'l Prop. & Cas. Co.,* 126 S.W.3d 505 (Tenn. Ct. App. 2004). In addition, under Tennessee law, unless the policy requires actual notice, an insured "need not actually receive the notice in order for the cancellation to be effective." *Blurton v. Grange Ins. & Cas. Co.,* 159 S.W.3d 1, 8-9 (Tenn. Ct. App. 2004). The issue, then, is whether the evidence as a whole preponderates in favor of a finding that the notice was actually mailed.

Here, Defendant has offered extensive proof of its customary mailing practices to show that the specific notices at issue were prepared and mailed in the ordinary course of

11

business. However, Plaintiff and First Trust both failed to receive the notices of cancellation. The affidavit of Brian Sexton, former employee of First Trust, states that he handled Plaintiff's mortgage, had discussions with the local agent for State Farm about the premium for the policy, issued the check for paying the premium on the insurance policy, and had the check mailed to the local agent. Sexton further stated that no communication was ever received from State Farm concerning the policy or the lack of premium to be paid. Similarly, Plaintiff states in her affidavit that she never received the notice of cancellation and that she never received the premium refund check that Defendant states was mailed to her, and in fact the premium refund check was never cashed. In addition, State Farm retained the funds for payment of the premium while denying coverage to Plaintiff.

Given the above circumstances the Court concludes that there exist in this case material issues of fact whether the cancellation notices from State Farm were mailed in the regular course of business, such that Defendant can rely upon the presumption that the notices were actually mailed in accordance with the policy provisions for cancellation. Accordingly, the Court will **DENY** Defendant's motion for summary judgment as to Plaintiffs' breach of contract claim.

    **B.**    **Bad Faith Claim under Tenn. Code Ann. § 546-7-105**

Plaintiff alleges that State Farm acted in bad faith when it denied her claim for fire loss. Plaintiff's claim for bad faith arises under Tenn. Code Ann. § 56-7-105, which provides for recovery of a sum not exceeding twenty-five percent (25%) of the liability

12

for a loss as long as certain conditions are met prior to suing for a bad faith refusal to pay. This statute is penal in nature, and all elements must be strictly construed. *St. Paul Fire & Marine Ins. Co. v. Kirkpatrick,* 164 S.W. 1186, 1190 (Tenn. 1914). Plaintiff has the burden of proving bad faith. *Palmer v. Nationwide Mut. Fire Ins. Co.,* 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986). Defendant argues that summary judgment should be granted on this issue because Plaintiff failed to comply with Tenn. Code Ann. § 56-7-105 which requires that four conditions be met before an award of the bad faith penalty is proper: (1) the policy by its terms must have become due and payable; (2) a formal demand for payment must have been made; (3) the insured must have waited sixty (60) days after making a demand before filing suit; and (4) the refusal to pay must not have been in good faith. *Id.*

The purpose for requiring an insured to make a formal demand are (1) to allow the insurer an opportunity to investigate the insured's claim; (2) to give the insurance company notice of the insured's intent to assert a bad faith claim if the disputed claim is not paid; and (3) to memorialize the fact that 60 days have expired after the insured gave such notice before suit is filed. *Hampton v. Allstate Ins. Co.,* 48 F. Supp.2d 739 (M.D. Tenn. 1991).

It is the insured's burden to show that a formal demand has been made. *Musser v. Tenn. Farmers Mut. Ins. Co.,* 1989 WL 135328 at *2 (Tenn. Ct. App. 1989). The mere submission of the insurance claim is not sufficient to demonstrate that the statute has been satisfied. *See PacTech Inc. v. Auto-Owners Ins. Co.,* 292 S.W.3d 1, 10 (Tenn. Ct.

13

App. 2008 ("Even though an insured has completed all forms required by the insurer, this is insufficient to meet the requirement of the statute that formal demand be made because such requirement shows that the insurer is entitled to notice of the claim for bad faith and a period in which to reflect upon the consequences of its failure to pay").

Here, Plaintiff failed to put State Farm on notice of her intention to pursue litigation and to seek the bad faith penalty pursuant to Tenn. Code. Ann. § 56-7-105. Even if the Court were to construe Plaintiff's letter of April 15, 2011 as satisfying the formal demand requirement, Plaintiff filed her lawsuit nineteen (19) days later, clearly failing to wait the sixty (60) days required by the statute. The sixty (60) day demand requirement does not have any bearing upon the right of the Plaintiff to enforce the contract itself, nor is it unjust or improper to require it. *Walker v. Tenn. Farmers Mut. Ins. Co.,* 568 S.W.2d 103, 106 (Tenn. Ct. App. 1977). By filing suit, Plaintiff exercised her right to enforce the insurance contract. Because no demand was ever sent by Plaintiff to State Farm, the Court finds that Plaintiff has voluntarily waived her right to seek a bad faith penalty. Accordingly, the Court finds that Defendant is entitled to judgment as a matter of law on Plaintiff's claim for the bad faith penalty under Tenn. Code Ann. § 56-7-105, and Defendant's motion for summary judgment is **GRANTED** to the extent that Plaintiff's claim for the bad faith penalty is **DISMISSED.**

## IV. Conclusion

For the reasons stated herein, Defendant's motion for summary judgment [Doc. 32] is **GRANTED in part and DENIED in part** as follows:

1. Defendant's motion is **GRANTED** as to Plaintiffs' claim for the bad faith penalty under Tennessee Code Ann. § 56-7-105; and

2. Defendant's motion is **DENIED** as to Plaintiffs' claim for breach of contract.

**IT IS SO ORDERED.**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE